USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/29/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
    SHAQUILLE DINKINS,

                              Plaintiff,

                  -v-                        1:15-cv-8914-GHW

    C.O. DECOTEAU and C.O. HARRIS,        MEMORANDUM OPINION AND
                             Defendants.                  ORDER

-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

    Plaintiff Shaquille Dinkins alleges that Correction Officers DeCoteau and Harris (collectively, "Defendants") used excessive force to restrain and handcuff him, injuring his wrist and finger. Mr. Dinkins seeks to recover damages stemming from that incident in this civil rights action.

    Prior to filing this lawsuit, Mr. Dinkins settled two other lawsuits he brought against New York City correction officers. In conjunction with that settlement, Mr. Dinkins signed a release in which he discharged New York City and its employees from "any and all liability, claims, or rights of action alleging a violation of [his] civil rights" from "the beginning of the world" to September 15, 2015, the date of the release. Bahrenberg Decl. Ex. B, ECF No. 16-2 (the "General Release"). Because the claim asserted here falls within the scope of the General Release, Defendants' motion for summary judgment is GRANTED.

### I.    Background

    On April 21, 2015, Mr. Dinkins filed two lawsuits against multiple New York City correction officers. *Dinkins v. C.O. Shepherd, et al.*, 15-cv-3202-PKS-AJP ("*Dinkins I*"); and *Dinkins v. C.O. Munoz, Shield # 10864*, 15-cv-3218-GHW ("*Dinkins II*"). Several months later, Mr. Dinkins settled both actions as part of a single settlement with the City of New York. Under the terms of the

settlement, Mr. Dinkins was paid $1,500.00 in return for releasing any existing claims against the City of New York. Bahrenberg Decl., Ex. D, ECF No. 16-4, (the "Stipulation of Settlement"). In conjunction with the settlement, Mr. Dinkins also executed the General Release which stated, in relevant part, that Mr. Dinkins released the City of New York, and all of its past and present employees

> from any and all liability, claims or rights of action alleging a violation of plaintiff's civil rights and any and all related state law claims, from the beginning of the world to the date of the General Release, including claims for costs, expenses, and attorneys' fees.

Bahrenberg Decl., Ex. B, ECF No. 16-2. The language of the General Release was also included in the Stipulation of Settlement, and was explained in a cover letter from defense counsel transmitting the General Release and the Stipulation of Settlement. Bahrenberg Decl. Ex. A, ECF No. 16-1. Mr. Dinkins executed the General Release on September 15, 2015. Bahrenberg Decl., Ex. B, ECF No. 16-2.

Mr. Dinkins, proceeding *pro se*, filed this lawsuit on November 12, 2015, alleging use of excessive force and "staff misconduct." Compl. 3-4, ECF No. 2. Specifically, he alleges that while a "clean-up team" was in his cell on October 31, 2014, Correction Officer DeCoteau approached him and used excessive force to put Mr. Dinkins on his stomach with his hands cuffed behind his back. *Id.* at 2-3. Mr. Dinkins also alleges that when he complained that he was in pain, Correction Officer DeCoteau responded, "I'm not doing anything but holding you." *Id.*

Mr. Dinkins asserts that he sustained an injury to his right wrist and finger, and that his "hand can no longer go straight because of [his] tendon." *Id.* at 3. He was given a splint for his hand, and "was supposed to go see a surgeon at Bellevue, but was never sent to see the surgeon." *Id.*

On May 2, 2016, Defendants moved for summary judgment, asserting that Mr. Dinkins released this claim when he signed the General Release. Defs.' Mot. Summ. J., ECF No. 15. The

Court received a letter opposing Defendants' motion on May 10, 2016. Pl.'s Letter, ECF No. 24. The Court has received no additional submissions opposing the motion from Mr. Dinkins and the June 2, 2015 deadline for him to file any opposition has passed. Tr. of Mar. 24, 2016 Conference 11, ECF No. 21.

**II.     Standard of Review**

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, a plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). The plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of the plaintiff. *Id.*

Because he is proceeding *pro se*, the Court liberally construes Mr. Dinkins's submissions and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (citation omitted).

In general, a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). Unambiguous language has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself and concerning which there is no reasonable basis for a difference in opinion." *Seiden Assoc. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (internal quotation marks and citation omitted).

### III.    Discussion

Under New York law, "[r]eleases are contracts and their interpretation is governed by principles of contract law." *Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (N.Y. App. Div. 2d Dep't 2000).[1] When "the language of a release is clear and unambiguous, the signing of the release is a 'jurial act' binding on the parties." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 929 N.Y.S.2d 3, 8 (N.Y. 2011) (quoting *Booth v. 3669 Delaware*, 680 N.Y.S.2d 899, 900 (N.Y. 1998)).

---

[1] This principle applies equally in cases involving *pro se* plaintiffs. *Cuadrado v. Zito*, No. 13-cv-3321-VB, 2014 WL 1508609, at *2 (S.D.N.Y. Mar. 21, 2014) (citing *Duran v. J.C. Refinishing Contracting Corp.*, 421 F. App'x 20, 21 (2d Cir. 2011)); *see also Case v. City of New York*, No. 12-cv-2189-AJN-AJP, 2012 WL 5951296 (S.D.N.Y. Nov. 28, 2012) (holding that the written offer and acceptances between the pro se plaintiff and City defendant formed a valid and binding settlement agreement).

"A release may be invalidated, however, for any of 'the traditional bases for setting aside written agreements, namely duress, illegality, fraud, or mutual mistake.'" *Id.* (quoting *Mangini v. McClurg*, 24 N.Y.2d 556, 563 (N.Y. 1969)).

Mr. Dinkins agreed to release "all past and present officials, employees, representatives, and agents of the City of New York . . . from any and all liability, claims, or rights of action alleging a violation of [his] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release," which was September 15, 2015. Bahrenberg Decl. Ex. B, ECF No. 16-2.

The language of the General Release is unambiguous. *See Cuadrado*, 2014 WL 1508609, at *2 (holding that identical wording was unambiguous). As correction officers employed by the City's Department of Corrections, Defendants qualify as "past or present employees" of the City of New York. This lawsuit, brought under 42 U.S.C. § 1983, alleges violations of Mr. Dinkins's civil rights. Finally, Mr. Dinkins released all claims "from the beginning of the world" to the "date of this General Release," which would include all claims that had accrued prior to September 15, 2015, the date the General Release was executed. Since the incident complained of in the instant suit occurred in October of 2014, Mr. Dinkins released this claim when he signed the General Release. *See, e.g., Lucio v. Curran*, 2 N.Y.2d 157, 161-62 (N.Y. 1956) ("[W]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.").

To the extent that Mr. Dinkins's letter raises the argument that he understood the release to only bar claims on which no action had been taken prior to the execution of the General Release, Pl.'s Letter, ECF No. 24, the unambiguous language of the General Release, rather than Mr. Dinkins's subjective understanding, controls. *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d

158, 162 (2d Cir. 2012) ("[w]ith unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant."). Since Mr. Dinkins does not allege "duress, illegality, fraud, or mutual mistake," *see Centro Empresarial Cempresa S.A.*, 929 N.Y.S.2d at 8, he is bound by the terms of the General Release and this lawsuit must be dismissed.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: June 29, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge